No. 552

First Circuit

———

ELECTRICAL SUPPLY CO. v. PACE

———

(December 30, 1929. Opinion and Decree.)

———

Moss & Siess, of Lake Charles, attorneys for plaintiff, appellant.

McCoy, Moss & King, of Lake Charles, attorneys for defendant, appellee.

MOUTON, J. December 3, 1927, plaintiff company sold a power unit for a No. 104 R. C. A. speaker to defendant, and on the same date shipped it to him at Lake Charles, Louisiana.

Defendant having refused to pay for the unit, plaintiff brings this suit asking judgment against defendant in the sum of $152.52, the price for the unit, with legal interest from February 1, 1928.

The defense is substantially that the unit was not a new one, but was second-hand and defective. The sum of $49.50 is also claimed in reconvention for express charges and damages alleged to have been caused by the defective unit.

Judgment was rendered rejecting plaintiff's demand, and allowing to defendant the sum of $47 in damages.

Plaintiff appeals.

William Mackee, radio man of plaintiff company, testifies that the unit shipped to defendant was of the identical type ordered, was brand new, had been properly tested on signals in broadcasting stations before shipment, and was not defective in any of its parts.

December 4, 1927, defendant wrote a letter to plaintiff company complaining that the unit was defective; and, was not functioning properly. The unit was shipped back to plaintiff company.

In a letter to plaintiff of December 11, 1927, defendant referred to the unit as being new, but at the same time asked for a new unit, suggesting that it should be shipped directly from the factory. This suggestion indicates, it seems, that the unit was not new, because if defendant had so considered it, a new one from the factory would not have been requested.

Though the word "second-hand"—one of the grounds for the defense—is not used in the letter of December 11th, the equivalent appears in the demand for a new unit. The unit was, after its return, received in New Orleans at plaintiff's establishment, was repaired by Mackee, its radio expert, by the replacement of the condenser, and was then shipped back to defendant at Lake Charles.

The defendant, an expert in radio science, made the required connection of the power unit which apparently operated properly for two or three hours on its first trial, but on the second day became weaker and proved unsatisfactory. The defendant never used the unit thereafter and stored it away, expecting that plaintiff would furnish a new unit.

May 5, 1928, defendant wrote to plaintiff asking a discount on the price of the unit or else for advice as to what disposition he should make of the unit. Plaintiff would not agree to the discount and this suit followed.

The defendant explains that this letter of May 5, 1928, was written after he had had a full verbal discussion with Mr. Jansen, traveling agent of plaintiff, who suggested that defendant try to place the unit. He says he had a prospective purchaser for it, and could have disposed of it as a second-hand unit as was suggested by Jansen, less the discount asked for in the letter of May 5, 1928, all of which is referred to in the written opinion of the trial judge.

The defendant also contends that the back of the transformer is so close to the metal case enclosing the power unit as to render it dangerous and hazardous. Defendant says that he did not discover this defect until the day prior to the trial of the case. It is therefore apparent that he could not have complained of that defect in the letters which had preceded his discovery of this danger.

The trial judge in referring to this subject quoted the following from the Nation-

al Electrical Code of the National Board of Fire Underwriters, to-wit:

"The construction of an air-cooled transformer shall be such that when mounted on a plain surface the casing will make contact with such surface only at the points of support, providing elsewhere an air space of at least one-quarter inch between casing and surface."

The Court then proceeds to say:

"An examination of the power unit in question reveals that the transformer, which is an air cooled transformer, does not allow for an air space of at least one-quarter between the back of said transformer and the metal case enclosing said unit. This fact is not denied by plaintiff, and it is clearly apparent therefore, that the power unit furnished by plaintiff, did not, in this respect, comply with the regulations of the National Board of Fire Underwriters. Defendant and his witness, Jack Hildebrandt, an expert in electrical wiring, but having no expert knowledge of radio equipment, testified that the removal of insulation from the front of said transformer and the placing of the back part of said transformer so near to the metal case enclosing said unit would make it dangerous to life and property, through fire, to use said power unit in the condition it appeared to be at the time of the trial of this case. It is admitted by defendant that he did not discover that a sufficient air space did not exist between the back of said transformer and the metal case enclosing same, until the day prior to the trial of this case. The Court is of the opinion that this delay in discovering this defect in said power unit by defendant, does not preclude him from urging this defect, in connection with others, on the trial of this case. Plaintiff offers no evidence to rebut defendant's claim that the use of said power unit in its present condition is dangerous and hazardous, but seeks to show that the apparent displacement of said transformer is due either to defendant having installed another transformer in said power unit, or is due to the displacement of said transformer by knocks, jolts or falls occasioned in the shipping, handling and storing of said power unit. Defendant strenuously denies installing any new transformer in said power unit, or in any manner tampering with said transformer. The Court must accept his positive statement as against plaintiff's inference. The Court places no faith in plaintiff's contention that falls or jolts to said power unit in shipping, handling or storing caused the apparent displacement of the transformer therein. The transformer is attached to the metal case by bolts or screws coming through the bottom of said metal case. It would therefore be impossible to jar or drive said transformer to the back of said metal case without the bolt or screw head fastening said transformer to the bottom of said case, showing some evidence thereof. No evidence is shown by these bolt or screw fastenings. In addition to this had the transformer been driven or shoved toward the back of the containing case, the front part of said transformer would also have been moved backward. The front part of said transformer does not appear to have been moved back as is evidenced by the fact that it was apparently necessary to cut some insulation from the front part of said transformer in order to allow room to insert a radio tube."

The placing of the transformer referred to by the court, no doubt made the operation of the unit hazardous and dangerous to life and property. This defect must have existed at the time of the delivery of the unit, as appears by the facts to which the city judge refers, and consequently at the time of the sale or before. C. C. art. 2530. With such a serious vice or defect in the thing sold it is not to be supposed that defendant would have bought the unit had he known of its existence. C. C. art. 2520. The fact is that defendant, speaking of this defect, said: "If I had known that the transformer did not have the proper clearance I would not have given twenty-five cents for the unit." This serious defect, with the others complained of by defendant, entitled him to an avoidance of the sale.

This case is in reality one of facts which was resolved adversely to the contentions

of the plaintiff. We do not find that the lower court has fallen into any manifest error in rejecting the demand, and there is therefore no authority to justify a reversal.

The judgment denying the claim of the plaintiff and decreeing the sum of $47 to the defendant on his demand in reconvention is therefore affirmed with cost.